Elizabeth A. Strange
First Assistant United States Attorney
District of Arizona

By: Jeffrey R. Borup
    Assistant United States Attorney
    District of Arizona
    Two Renaissance Square
    40 North Central Avenue, Suite 1800
    Phoenix, Arizona  85004-4408
    Arizona State Bar No. 027681
    Email: jeffrey.borup@usdoj.gov
    Telephone: (602) 514-7500

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | VERIFIED COMPLAINT FOR |
| | ) | FORFEITURE IN REM |
| $18,970.00 in United States | ) | |
| Currency, | ) | |
| | ) | |
| Defendant In Rem. | ) | |
| | ) | |

1

1                        TABLE OF CONTENTS

2                                                          Page

3   INTRODUCTION ................................................ 4

4   NATURE OF THE ACTION ....................................... 4

5   DEFENDANT IN REM ........................................... 5

6   JURISDICTIONAL STATEMENT ................................... 5

7   BASIS FOR FORFEITURE ....................................... 6

8   SUMMARY OF FACTS ........................................... 7

9   FACTS ...................................................... 7

10  I. Traffic Stop and Discovery of $18,970 ("Subject Property"). 7

11      A. The CBP Yuma Border Patrol Sector ................... 7

12      B. Erratic Driving Behavior and Attempt to Evade ....... 9

13      C. Vehicle Traffic Stop in Quartzite, Arizona ......... 10

14      D. Roadside Interview of the Driver, Frank Martinez .... 11

15      E. Consent Search of the Vehicle ..................... 12

16      F. Detection of the Subject Property ................. 14

17      G. Questioning at the Blythe Border Patrol Station .... 15

18  II. Seizure of the Subject Property for Forfeiture ........ 17

19  III. Administrative Claim Filed by Frank Martinez ......... 17

20  FIRST CAUSE OF ACTION ..................................... 18

21  SECOND CAUSE OF ACTION .................................... 19

22  THIRD CAUSE OF ACTION ..................................... 20

23  FOURTH CAUSE OF ACTION .................................... 22

24  FIFTH CAUSE OF ACTION ..................................... 23

NOTICE TO ANY POTENTIAL CLAIMANT ............................. 24

PRAYER FOR RELIEF ............................................ 27

INTRODUCTION

COMES NOW, before this honorable Court, Plaintiff, United States of America, by and through its undersigned counsel, and pursuant to the provisions of Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Fed. R. Civ. P. Supp.") G(2), respectfully, to bring this Verified Complaint for Forfeiture In Rem.

Plaintiff hereby alleges as follows:

NATURE OF THE ACTION

1. This is a civil action brought to forfeit property seized by the United States government for violations of federal law that provide for the seizure, forfeiture, and disposal of certain property to the United States.

2. This action is an in rem legal proceeding against property, not against an individual, to determine rights in the property that are conclusive against the entire world.

3. This civil action in rem is brought to forfeit property pursuant to the provisions of 21 U.S.C. § 881(a)(6), 18 U.S.C. §§ 981(a)(1)(A), and 981(a)(1)(C), because it: (1) was involved in, (2) was used or intended to be used to facilitate, (3) was furnished or intended to be furnished in exchange for, or (4) is proceeds (or property) traceable to, a "specified unlawful activity" as defined by 18 U.S.C. § 1956(c)(7)(A).

4. Based upon the facts and circumstances herein set forth,

Plaintiff prays: (1) that process issue for an arrest warrant _in rem_ for the subject property; (2) that notice be given to all parties to appear and show cause why forfeiture should not be decreed; (3) that this Court enter a judgment of forfeiture to the United States; and (4) that this Court grant Plaintiff all other relief as it may deem just and proper, together with the costs and disbursements of this action.

DEFENDANT <u>IN REM</u>

5. The Defendant _in rem_ consists of the following property:

- $18,970.00 (eighteen thousand nine hundred seventy dollars) in United States currency.

(Hereinafter, the "subject property").

6. The subject property was seized by special agents working for the United States Customs and Border Protection ("CBP") on May 16, 2018.

7. The subject property is currently in the custody of CBP.

JURISDICTIONAL STATEMENT

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345 because this action is commenced by the United States of America, and pursuant to 28 U.S.C. § 1355(a) because this is an action for forfeiture.

9. This Court has _in rem_ jurisdiction over the subject property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to forfeiture occurred in the District of

Arizona, and pursuant to 28 U.S.C. § 1395(a) (via 28 U.S.C. § 1355(b)(1)(B)) because the subject property is located in the District of Arizona.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to forfeiture occurred in the District of Arizona; and pursuant to 28 U.S.C. § 1395 (via 28 U.S.C. § 1355(b)(1)(B)) because the subject property is located in the District of Arizona.

BASIS FOR FORFEITURE

11. The subject property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it: (1) was "furnished or intended to be furnished" in exchange for a controlled substance or listed chemical in violation of Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801, *et seq.* (the "Controlled Substances Act"), (2) represents "proceeds traceable" thereto, or (3) was "used or intended to be used to facilitate" a violation thereof. See 21 U.S.C. § 881(a)(6).

12. The subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it: (1) was "involved in," or (2) is "property traceable" to, a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, or 1960; to wit, "dealing in a controlled substance" under 18 U.S.C. § 1961(1)(A) and "interstate and foreign travel or transportation

1  in aid of racketeering enterprises" under 18 U.S.C. § 1952 –

2  "specified unlawful activit[ies]" under 18 U.S.C. § 1961(1)(A)

3  (by way of 18 U.S.C. § 1956(c)(7)(A)).

4     13. The subject property is subject to forfeiture pursuant to

5  21 U.S.C. § 981(a)(1)(C) because it constitutes or is derived

6  from "proceeds traceable" to "dealing in a controlled substance"

7  under 18 U.S.C. § 1961(1)(A) and "interstate and foreign travel

8  or transportation in aid of racketeering enterprises" under 18

9  U.S.C. § 1952 – "specified unlawful activit[ies]" under 18

10  U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

11                          SUMMARY OF FACTS

12     14. On May 16, 2018, CBP conducted a traffic stop in

13  Quartzite, Arizona, which led to the discovery and seizure of

14  $18,970 from Frank Martinez, the driver of a silver Dodge

15  Charger.

16     15. The $18,970 was located inside the vehicle in a clear

17  plastic bag along with 7.8 grams of marijuana and a white

18  envelope containing $340.

19     16. Based upon the experience of CBP agents, and the totality

20  of the circumstances further described below, CBP seized the

21  $18,970 for forfeiture.

22                                FACTS

23  I. Traffic Stop and Discovery of $18,970 ("Subject Property")

24       *A. The CBP Yuma Border Patrol Sector*

17. On May 16, 2018, CBP Agents Jesse Martinez ("Agent Martinez") and Erik Herrera ("Agent Herrera") were assigned traffic observation duties in the general area of Blythe, California.

18. Agents Martinez and Herrera were on assignment with the Yuma Border Patrol Sector (the "Yuma Sector") of the United States Border Patrol.

19. The Yuma Sector patrols roughly 126 miles of border with Mexico, between the Yuma-Pima County line in Arizona and the Imperial Sand Dunes in California.

20. The Yuma Sector has responsibility for Yuma, La Paz, and Mojave Counties in Arizona, the Eastern-most areas of Imperial, Riverside, and San Bernardino Counties in California, and the entire State of Nevada.

21. At approximately 10:15 P.M., Agents Martinez and Herrera parked their CBP vehicle on the median of Interstate 10, milepost 20, near Quartzsite, Arizona.

22. Based upon the experience of CBP agents, smugglers often use the area near Quartzsite, Arizona, to transport undocumented aliens and illegal contraband because it gives them a well-established and direct route to large cities.

23. Based upon the experience of CBP agents, smugglers prefer to utilize interstates because they are heavily travelled and they provide an opportunity to blend in with common motorists

that use this route of travel on a regular basis.

   *B. Erratic Driving Behavior and Attempt to Evade*

24. At approximately 10:30 P.M., Agent Martinez noticed a silver Dodge Charger (the "Charger") pass his location.

25. The driver of the Charger caught Agent Martinez' attention because the driver looked at the CBP vehicle and quickly turned to look forward.

26. Based upon the experience of CBP agents, it is common to see this type of behavior with illegal aliens and individuals involved in criminal activities in the presence of law enforcement officers.

27. Agent Martinez followed the Charger for further inspection.

28. As Agents Martinez and Herrera neared the Charger, it reduced its speed drastically and changes lanes.

29. Based upon the experience of CBP agents, this is a method commonly used by smugglers in order to decrease the probability of apprehension by law enforcement.

30. Using the laptop in the CBP vehicle, Agent Herrera ran a Department of Homeland Security record check on the Charger license plate (California license plate no. 7ZEE461).

31. The registration on the Charger was current, belonging to "EAN Holdings" in Tulsa, Oklahoma.

32. Based upon the experience of CBP agents, smugglers often

use recently purchased or rental vehicles to transport their illegal contraband to reduce their loss in case of apprehension by law enforcement.

33. The Charger exited the Interstate at Exit 16 in Quartzsite, Arizona, without using its turn signal.

34. Based upon the experience of CBP agents, it is common to see this type of driving behavior by smugglers in an attempt to decrease the probability of apprehension by law enforcement.

35. Agents Martinez and Herrera suspected at this time that the driver of the Charger might be illegally present in the United States or otherwise involved in illegal activity.

   C. *Vehicle Traffic Stop in Quartzite, Arizona*

36. Agent Martinez activated his emergency equipment in order to conduct a vehicle stop.

37. Agents Martinez and Herrera intended then to conduct an immigration inspection on the occupant of the Charger.

38. The driver of the Charger looked through his driver's side mirror and noticed the emergency lights of the CBP vehicle.

39. The Charger began to pull into the McDonald's parking lot located in Quartzsite, Arizona.

40. Agent Martinez directed the driver of the Charger to pull into one of the parking spaces to his right.

41. The driver of the Charger complied with Agent Martinez' directive.

42. Pursuant to 8 USC § 1357(a)(3), CBP officers have the right to stop and conduct warrantless searches on railway cars, vessels, trains, aircraft, or other vehicles anywhere within 100 air miles from any external boundary of the United States, including coastal boundaries, unless an agency official sets a shorter distance.

43. While approaching the Charger, Agent Martinez noticed a backpack in the back seat.

44. Agent Martinez noticed two other bags in the front passenger seat of the Charger.

   *D. Roadside Interview of the Driver, Frank Martinez*

45. The driver of the Charger, later identified as Frank Daniels Martinez ("Frank Martinez") (DOB: 10/21/1964), stated that he was a United States citizen.

46. When asked about his route of travel, Frank Martinez stated that he traveled from Granada Hills, California to Tucson, Arizona.

47. Frank Martinez stated that the purpose of his travel was to take his son to his aunt's house.

48. Frank Martinez stated that he was currently traveling back home to Granada Hills, California.

49. Frank Martinez searched the interior of the Charger to find his identification to give to Agent Martinez.

50. Agent Martinez asked Frank Martinez if he had any weapons

1    in the Charger.

2      51. Frank Martinez stated that he did not have any weapons in

3    the Charger.

4      52. Agent Martinez asked if he had any narcotics in the

5    Charger, such as cocaine, heroin, methamphetamines or marijuana.

6      53. Frank Martinez responded "[n]o."

7      54. Agent Martinez asked if Frank Martinez had a medical

8    marijuana card.

9      55. Frank Martinez replied "[y]es."

10      56. Frank Martinez then changed his answer to "[n]o."

11      57. Frank Martinez then said that he "shouldn't."

12      58. Frank Martinez then said "[y]es" again.

13      59. As Frank Martinez was answering the question, Agent

14    Martinez noticed him reach for his tan military-style bag (the

15    "tan bag") that was on the front passenger seat.

16      60. Agent Martinez then noticed Frank Martinez pulled away

17    from the tan bag as if he was scared to touch it.

18      61. Based upon the experience of CBP agents, this type of

19    behavior is common when a subject tries to create distance from

20    any contraband that they know is in their proximity.

21      *E. Consent Search of the Vehicle*

22      62. Agents Martinez and Herrera asked Frank Martinez for his

23    consent to search the Charger.

24      63. Frank Martinez consented to the search of the Charger.

64. Agent Herrera searched the trunk of the Charger.

65. When asked if he had any large amounts of currency with him, Frank Martinez said, "No."

66. Agent Martinez asked Frank Martinez if he had any marijuana with him.

67. When asked if he had any marijuana with him, Frank Martinez stated that he did not have any marijuana, but was in possession of "CBD."

68. Based upon the experience of CBP agents, CBD refers to Cannabidiol, a naturally occurring cannabinoid constituent of the cannabis plant, commonly known as marijuana.

69. When asked where his CBD was, Frank Martinez reached for the tan bag, quickly turned to grab another bag, and then said that it may be in his backpack located in the back seat.

70. He was again trying to disassociate himself from the tan bag.

71. Frank Martinez then said he could not remember exactly where his CBD was located.

72. Frank Martinez consented to have Agent Herrera search his backpack located in the back seat.

73. Agent Herrera did not locate any CBD in Frank Martinez's backpack located in the back seat.

74. Frank Martinez consented to have Agent Herrera search the two bags in the front passenger seat, including the tan bag.

75. As Agent Herrera was searching the red bag beside the tan bag, Frank Martinez began to be very talkative.

76. As soon as Agent Herrera touched the tan bag, Frank Martinez suddenly stopped talking.

*F. Detection of the Subject Property*

77. Agents Martinez and Herrera conducted a thorough search of the tan bag, and therein located:

- A white envelope containing $340 in United States currency;

- A clear plastic bag containing $18,970 in United States currency (the subject property);

- 7.8 grams of a green leafy substance (revealed through subsequent tests to be marijuana); and

- A receipt indicating Frank Martinez' timesheet.

78. Agent Martinez asked Frank Martinez to exit the vehicle.

79. Agent Martinez noticed the subject property was in several stacks and tied a rubber band.

80. Once outside the vehicle, Agent Martinez asked why Frank Martinez informed that he did not have any large amounts of money with him.

81. Frank Martinez said that because he did not know who Agents Martinez and Herrera were, he did not want to say that he had money on his person, even though the Agents identified themselves as United States Border Patrol Agents and carry a

badge that is visible to the public.

82. Based upon the experience of CBP agents, people involved in criminal activity tend to try to come up with a good excuse as to why they did not tell the truth when caught in a lie, in hopes that it may lessen the gravity of the situation.

83. Agent Martinez asked if Frank Martinez was able to provide the correct denomination for each stack.

84. Frank Martinez looked at him in a confused manner, shrugged his shoulders, and said, "I don't know the exact amount but it's between $30,000 and $40,000."

85. Frank Martinez informed that he had bank receipts and other types of receipts for the money at home.

86. Agents Martinez and Herrera transported the subject property, the marijuana, and Frank Martinez to the Blythe Border Patrol Station for further questioning.

*G. Questioning at the Blythe Border Patrol Station*

87. At the Blythe Border Patrol Station, Agents Herrera and Martinez began counting the subject property.

88. Agent Herrera informed Agent Martinez that there was an overwhelming smell of marijuana emitting from the subject property.

89. During this time, Agents Herrera and Martinez encountered a small untestable trace amount of Tetrahydrocannabinol ("THC") wax/hash oil between several bills that were stuck together.

90. Based upon the experience of CBP agents, THC wax/hash oil is a concentrated form of the marijuana plant obtained through the extraction of cannabis or hashish.

91. Agents Herrera and Martinez informed Frank Martinez that the sum of subject property seized totaled $18,970.

92. Upon learning of this amount, Frank Martinez made an excited utterance, "[i]t was supposed to be more than that."

93. Agent Martinez placed the subject property into an evidence bag.

94. Upon placing white envelope containing $340 into the same evidence bag, Frank Martinez asked why the CBP agents were also seizing his "Personal Money."

95. As Agent Martinez placed the white envelope in the evidence bag, Frank Martinez asked, "Why are you seizing my personal money?"

96. Frank Martinez showed no concern when Agent Martinez placed the money from the clear plastic bag into the evidence bag but showed a significant concern about the money in the white envelope as Agent Martinez placed it in the same evidence bag.

97. Based upon the experience of CBP agents, smugglers often tend to distance themselves from any currency because of its criminal underpinnings.

98. Once out of the vehicle, Agent Martinez asked Frank

Martinez to whom the money belonged.

99. Frank Martinez said, "It's mine, it's my life saving."

100.    Agent Martinez asked Frank Martinez why he had said no when Agent Martinez asked him about having any large amount of money.

II. Seizure of the Subject Property for Forfeiture

101.    CBP agents seized the subject property for forfeiture per Yuma Sector guidelines governing asset forfeiture.

102.    CBP agents seized the marijuana for destruction per Yuma Sector guidelines governing contraband.

103.    CBP agents released Frank Martinez, the white envelope containing $340, and the Charger, with no further incident.

III. Administrative Claim Filed by Frank Martinez

104.    On May 21, 2018, CBP initiated administrative forfeiture proceedings against the subject property by mailing a Notice of Seizure, Information to Claimants, and CAFRA form to Frank Martinez by certified mail.

105. In response to this notice, Attorney Stephen J. Fisch, of Shevin Law Group, on behalf of Frank Martinez, sent a letter dated June 22, 2018 to CBP.

106. Frank Martinez's letter included an executed Election of Proceedings, Claim for Seized Property, and a Personal Fact Sheet.

107. On June 26, 2018, the Yuma Sector Supervisory Border

Patrol Agent at CBP referred this matter to the United States
Attorney's Office in Phoenix to initiate judicial forfeiture
proceedings.

FIRST CAUSE OF ACTION

108. Plaintiff repeats and realleges the averments in
paragraphs one through 107 as though fully set forth herein.

109. For the reasons set forth above, the subject property is
subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because
it: (1) was "furnished or intended to be furnished" in exchange
for a controlled substance or listed chemical in violation of
Title II of the Comprehensive Drug Abuse Prevention and Control
Act of 1970, 21 U.S.C. §§ 801, *et seq.* (the "Controlled
Substances Act"), (2) represents "proceeds traceable" thereto,
or (3) was "used or intended to be used to facilitate" a
violation thereof. See 21 U.S.C. § 881(a)(6).

110. Pursuant to 21 U.S.C. § 881(a)(6), "[a]ll moneys,
negotiable instruments, securities, or other things of value
furnished or intended to be furnished by any person in exchange
for a controlled substance or listed chemical in violation of
[21 U.S.C. §§ 801-904], all proceeds traceable to such an
exchange, and all moneys, negotiable instruments, and securities
used or intended to be used to facilitate any violation of
[thereof]" are subject to forfeiture to the United States. 21
U.S.C. § 881(a)(6).

SECOND CAUSE OF ACTION

111. Plaintiff repeats and realleges the averments in paragraphs one through 107 as though fully set forth herein.

112. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it: (1) was "involved in," or (2) is "property traceable" to, a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, or 1960; to wit, "dealing in a controlled substance" a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

113. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction in violation of 1956, 1957 or 1960 of [Title 18], or any property traceable to such property," is subject to forfeiture to the United States.

114. Pursuant to 18 U.S.C. §  1956:

> (3)Whoever, with the intent—
>     (A) to promote the carrying on of specified unlawful activity;
>     (B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or
>     (C) to avoid a transaction reporting requirement under State or Federal law,
> conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both.

115. The term "specified unlawful activity" means "any act or

activity constituting an offense listed in section 1961(1) of

[Title 18]." <u>See</u> 18 U.S.C. § 1956(c)(7).

116. The list of offenses under section 1961(1)(A) are further
defined as "racketeering activity," and include "any act or
threat involving . . . dealing in a controlled substance or
listed chemical (as defined in section 102 of the Controlled
Substances Act), which is chargeable under State law and
punishable by imprisonment for more than one year[.]" <u>See</u> 18
U.S.C. § 1961(1)(A).

THIRD CAUSE OF ACTION

117. Plaintiff repeats and realleges the averments in
paragraphs one through 107 as though fully set forth herein.

118. For the reasons set forth above, the subject property is
subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A)
because it: (1) was "involved in," or (2) is "property
traceable" to, a transaction or attempted transaction in
violation of 18 U.S.C. §§ 1956, 1957, or 1960; to wit,
interstate and foreign travel or transportation in aid of
racketeering enterprises in violation of 18 U.S.C. § 1952, a
"specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by
way of 18 U.S.C. § 1956(c)(7)(A)).

119. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property,
real or personal, involved in a transaction in violation of
1956, 1957 or 1960 of [Title 18], or any property traceable to

such property," is subject to forfeiture to the United States.

120. Pursuant to 18 U.S.C. § 1956:

> (3) Whoever, with the intent—
>    (A) to promote the carrying on of specified unlawful activity;
>    (B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or
>    (C) to avoid a transaction reporting requirement under State or Federal law, conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both.

121. The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." See 18 U.S.C. § 1956(c)(7).

122. The list of offenses under section 1961(1)(A) are further defined as "racketeering activity," and include "any act which is indictable under . . . section 1952[.]" See 18 U.S.C. § 1961(1)(A).

123. Section 1952(a) describes the following as an indictable act:

> (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—
>    (1) distribute the proceeds of any unlawful activity; or
>    (2) commit any crime of violence to further any unlawful activity; or
>    (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity[.]

1

2    18 U.S.C. § 1952(a).

3        124. Section 1952(b) further describes "unlawful activity" as,

4    "any business enterprise involving . . . narcotics or controlled

5    substances (as defined in section 102(6) of the Controlled

6    Substances Act)[.]".

7                              FOURTH CAUSE OF ACTION

8        125. Plaintiff repeats and realleges the averments in

9    paragraphs one through 107 as though fully set forth herein.

10       126. For the reasons set forth above, the subject property is

11   subject to forfeiture pursuant to 21 U.S.C. § 981(a)(1)(C)

12   because it "constitutes or is derived from proceeds traceable"

13   to "dealing in a controlled substance," a "specified unlawful

14   activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. §

15   1956(c)(7)(A)).

16       127. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property,

17   real or personal, which constitutes or is derived from proceeds

18   traceable to . . . any offense constituting 'specified unlawful

19   activity' (as defined in section 1956(c))" is subject to

20   forfeiture to the United States. See 21 U.S.C. §

21   981(a)(1)(C)(2018).

22       128. The term "specified unlawful activity" means "any act or

23   activity constituting an offense listed in section 1961(1) of

24   [Title 18]." See 18 U.S.C. § 1956(c)(7).

1    129. The list of offenses under section 1961(1)(A) are further

2    defined as "racketeering activity," and include "any act or

3    threat involving . . . dealing in a controlled substance or

4    listed chemical (as defined in section 102 of the Controlled

5    Substances Act), which is chargeable under State law and

6    punishable by imprisonment for more than one year[.]" See 18

7    U.S.C. § 1961(1)(A).

8                        FIFTH CAUSE OF ACTION

9    130. Plaintiff repeats and realleges the averments in

10   paragraphs one through 107 as though fully set forth herein.

11   131. For the reasons set forth above, the subject property is

12   subject to forfeiture pursuant to 21 U.S.C. § 981(a)(1)(C)

13   because it "constitutes or is derived from proceeds traceable"

14   to a violation of 18 U.S.C. § 1952 ([i]nterstate and foreign

15   travel or transportation in aid of racketeering enterprises), a

16   "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by

17   way of 18 U.S.C. § 1956(c)(7)(A)).

18   132. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property,

19   real or personal, which constitutes or is derived from proceeds

20   traceable to . . . any offense constituting 'specified unlawful

21   activity' (as defined in section 1956(c))" is subject to

22   forfeiture to the United States. See 21 U.S.C. §

23   981(a)(1)(C)(2018).

24   133. The term "specified unlawful activity" means "any act or

activity constituting an offense listed in section 1961(1) of [Title 18]." See 18 U.S.C. § 1956(c)(7).

134. The list of offenses under section 1961(1)(A) are further defined as "racketeering activity," and include "any act which is indictable under . . . section 1952[.]" See 18 U.S.C. § 1961(1)(A).

135. Section 1952(a) describes the following as an indictable act:

> (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—
> (1) distribute the proceeds of any unlawful activity; or
> (2) commit any crime of violence to further any unlawful activity; or
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity[.]

18 U.S.C. § 1952(a).

136.   Section 1952(b) further describes "unlawful activity" as, "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)[.]"

NOTICE TO ANY POTENTIAL CLAIMANT

YOU ARE HEREBY NOTIFIED that if you assert an interest in the subject property and want to contest the forfeiture, you must file a verified claim that fulfills the requirements set forth in Fed. R. Civ. P. Supp. G. To avoid entry of default, a

verified claim must be filed no later than thirty-five days from the date this Complaint has been sent in accordance with Fed. R. Civ. P. Supp. G(4)(b).

An answer or motion filed under Fed. R. Civ. P. 12 must also be filed no later than twenty-one days after filing the claim. The claim and answer must be filed in the United States District Court for the District of Arizona under the case number listed in the caption above and a copy must be served upon the undersigned Assistant United States Attorney at the address provided in this Complaint.

This notice provision does not provide you with any legal advice and is designed only to provide you with a general understanding of these proceedings. Any statements made in your claim or answer may be introduced as evidence against you in any related or future criminal case. You should consult an attorney to represent your interests in this matter, and note that a stay of proceedings may be available under 18 U.S.C. § 981(g)(2).

IF YOU ARE A VICTIM, and have sustained economic loss as a result of the crime(s) giving rise to this civil action, you may be entitled to petition for remission, mitigation, or restoration under Title 28, Code of Federal Regulations ("C.F.R."), section 9.2. In lieu of filing a Claim with the Court, you may promptly submit a letter outlining your interest in the property to the undersigned Assistant United States

Attorney. Plaintiff will notify you when it has received your letter, and further instructions may be provided upon conclusion of this action. The United States Attorney General shall have sole responsibility for disposing of petitions for remission or mitigation with respect to property involved in a judicial forfeiture proceeding under 18 U.S.C. § 981(d) and 21 U.S.C. § 881(d). If your status as a victim is contested, timely receipt of your letter will not shield you from entry of default for failing to file a proper claim with the Court.

IF YOU ARE A LIENHOLDER, it is the policy of the United States Attorney's Office to honor all claims received from legitimate titled lienholders as defined under 28 C.F.R. § 9.2. In lieu of filing a claim with the Court, you may send a letter to the undersigned Assistant United States Attorney outlining your interest in the property, including: (1) the amount presently owed on the lien; (2) a copy of the security agreement setting forth your interest; and, (3) whether the owner is in default. If your lien is sufficient, Plaintiff will notify you to verify receipt of your letter. In the event of forfeiture, and to the extent practicable, proceeds from the sale and disposition of the subject property will be remitted to you in satisfaction of the lien. As noted above, timely receipt of your letter will not shield you from entry of default for failing to file a proper claim with the Court.

1                                      PRAYER FOR RELIEF

2         WHEREFORE, based upon the aforementioned facts and

3    circumstances, Plaintiff, United States of America, by and

4    through its undersigned counsel, and pursuant to Fed. R. Civ. P.

5    Supp. G(3)(b), respectfully, prays:

6         1) That process issue for an arrest warrant _in rem_ for the

7    subject property, which Plaintiff will execute in accordance

8    with 28 U.S.C. § 1355(d) and Fed. R. Civ. P. Supp. G(3)(c);

9         2) That due notice be given to all parties to appear and show

10   cause why forfeiture of the subject property to the United

11   States in accordance with the claims herein set forth should not

12   be decreed;

13        3) That this Court enter a judgment of forfeiture for the

14   subject property to the United States; and

15        4) That this Court grant Plaintiff all other relief as it may

16   deem just and proper, together with the costs and disbursements

17   of this action.

18        DATED this 24th day of September 2018.

19                                 Elizabeth A. Strange
                                   First Assistant United States Attorney
20                                 District of Arizona

21                                 By: s/ _Jeffrey R. Borup_
                                      Jeffrey R. Borup
22                                    Assistant United States Attorney

23                                 Attorneys for Plaintiff
                                   United States of America
24

27

JS 44   (Rev. 08/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

## DEFENDANTS
$18,970.00 in United States Currency

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Yuma
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jeffrey R. Borup, Assistant U.S. Attorney
Two Renaissance Square, 40 N. Central Avenue, Suite 1800
Phoenix, AZ 85004-4408; phone: 602-514-7500

Attorneys *(If Known)*
Stephen J. Fisch, Esq. of Shevin Law Group
15260 Ventura Boulevard, Suite 1400
Sherman Oaks, CA 91403-5348; phone: 818-784-2700

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                      *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☒ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
21 USC 881; 18 USC 981
Brief description of cause:
Forfeiture of U.S. Currency representing proceeds of exchange of controlled substances.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.    DEMAND $    CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*    JUDGE    DOCKET NUMBER

DATE   09/24/2018    SIGNATURE OF ATTORNEY OF RECORD   S/ Jeffrey R. Borup

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

JS 44 Reverse  (Rev. 08/16)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    Nature of Suit. Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

1    State of Arizona    )
                       )    VERIFICATION

2    County of Maricopa    )
                       )

3 _____ )

4    COMES NOW, before this honorable court, Jesse Martinez, Border

5 Patrol Agent with United States Customs and Border Protection,

6 and pursuant to the provisions of 28 U.S.C. § 1746,

7 respectfully, to submit this Verification in support of the

8 foregoing Verified Complaint for Forfeiture In Rem.

9    Based upon reports and information known to me and/or

10 furnished to me by other law enforcement agents and government

11 representatives, I declare under penalty of perjury that the

12 foregoing Verified Complaint for Forfeiture In Rem is true and

13 correct.

14    EXECUTED this 21 day of September 2018.

15

16                    Jesse Martinez

17                    Border Patrol Agent
                     U.S. Customs and Border Protection

18

19

20

21

22

23

24

28